Peter R. Afrasiabi (Bar No. 193336)
Email: pafrasiabi@onellp.com
**ONE LLP**
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Telephone:  (949) 502-2870
Facsimile:   (949) 258-5081

Attorney for Plaintiff,
SCOTT NATHAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT NATHAN, an individual, | Case No. |
| Plaintiff, | **COMPLAINT FOR COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)** |
| v. | |
| AVN MEDIA NETWORK, INC., a California corporation; and DOES 1-10, inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

**COMPLAINT**

Plaintiff Scott Nathan ("Plaintiff"), by and through his attorneys of record, complains against Defendants AVN Media Network, Inc. ("AVN") and DOES 1-10, inclusive (collectively, "Defendants") as follows:

## JURISDICTION AND VENUE

1. This is a civil action against Defendants for their acts of copyright infringement in violation of the United States Copyright Act, 17 U.S.C. § 101 et seq.

2. This Court has subject matter jurisdiction over this copyright infringement action under 28 U.S.C. § 1331, 17 U.S.C. § 501(a), and 28 U.S.C. § 1338(a).

3. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(a) in that the claim arises in this judicial district, Defendants are incorporated in, have their principal place of business in, and regularly transact business in this judicial district.

## PARTIES

4. Plaintiff is an individual who resides in Los Angeles, California, and is the owner of the photographs at issue in this dispute.

5. Plaintiff is informed and believes, and upon that basis alleges, that AVN is a California corporation, with its principal place of business in Chatsworth, California.

6. DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will ask leave of Court to amend this Complaint and insert the true names and capacities of said defendants when the same have been ascertained. Plaintiff is informed and believes, and upon such alleges, that each of the defendants designated herein as a "DOE" are legally responsible in some manner for the events and happenings herein alleged, and that Plaintiff's damages as alleged herein were proximately caused by such defendants.

**STATEMENT OF FACTS**

*Plaintiff and His Business*

7. Plaintiff is a prolific multi-disciplinary artist with a career spanning over 20 years. He is an Amazon #1 bestselling author of *The Big Book of Bad Decisions*, a semi-autobiographical collection of comedic, mischievous, and entertaining tales of his life as an artist in Hollywood and elsewhere. Plaintiff is also an award-winning photographer, director, and video artist, whose groundbreaking "Confessional" series opened to sellout crowds and critical acclaim at the prestigious Frieze Art Fair in LA in 2019. Plaintiff has shot and directed global advertising campaigns, as well as music videos and commercials.

8. Plaintiff has worked with major brands and celebrities, such as the United States Marine Corps., the National Hockey League (NHL), MGM, Sephora, Sony Pictures, Allure, New Line Cinema, Paramount Pictures, Fred Segal, and Katy Perry. Plaintiff owns the exclusive rights to numerous high-value photographs, including the photographs at issue in this dispute (the "Photos"). In the marketplace, professional photographs carry tremendous monetary value.

9. Plaintiff charges fees for Plaintiff's professional photography services, including but not limited to fees for the rights to publish, copy and/or distribute Plaintiff's photograph.

10. As is the practice in the professional photography industry (and other media), Plaintiff does not always authorize the publication, copying and/or distribution of Plaintiff's photographs. Plaintiff values Plaintiff's exclusive rights as a copyright author. Plaintiff does not authorize the commercial publication of Plaintiff's photographs by for-profit business operators without reasonable compensation.

*Defendant and Its Business*

11. On information and belief, AVN (short for "Adult Video News") is a multimedia company that publishes AVN Magazine, a digital magazine catering to

3
**COMPLAINT**

the adult-film/pornographic industry. AVN Magazine publishes pornographic and non-pornographic material, including copyrighted or copyrightable content. AVN Magazine features risqué pictures of models and adult-film stars, in addition to industry news and advertising. AVN also operates the website AVN.com.

12.  As a prominent company with decades in the adult-film media publication industry and as host of industry conferences and events, as well as the publisher of a digital magazine, AVN is a sophisticated organization that is aware of the law as it relates to intellectual property rights, particular copyrights and licensing practices related to use of photos. AVN's professional operations includes the licensing of intellectual property rights, including but not limited to the licensing of copyrighted materials, including photographs and videos. AVN is aware that any materials published by AVN, including materials that contain third-party supplied materials, may be subject to copyright law.

13.  Given its sophistication and the nature of its business, AVN is aware that the reproduction, public display, publication or printing of photographs that are subject to United States copyright law requires a written agreement signed by the copyright author.

*The Photoshoots Underlying This Dispute*

14.  An Italian adult industry model and performer, Valentina Nappi ("Nappi"), retained Plaintiff as a photographer for a shoot. The first virtual video shoot with Nappi (the "First Shoot") took place on April 1, 2020. During this session (and all other sessions), Plaintiff directed the shoot and took the photographs and/or videos on his own equipment and is the author of all photos created.

15.  That same day, Plaintiff and Nappi entered a written model release covering the First Shoot (hereinafter the "Model Release"). The Model Release included Nappi's acknowledgement that Nappi had no rights to the content and that all rights in the content belonged to Plaintiff. Further, the Model Release provided Plaintiff the right to use any images that Plaintiff took of Nappi (regardless of the

photoshoot) in perpetuity, with no additional consents or permissions required from Nappi. Accordingly, Nappi retained no rights to the photographs from the First Shoot.

16. After the initial shoot, Nappi sought further collaboration with Plaintiff, resulting in additional photo and video shoots in October 2024 under the same customary working arrangements. Nappi consented to being the subject of these shoots and Plaintiff was the author of all photos taken and Nappi acknowledged Plaintiff's ownership of the resulting photographs ("Additional Nappi Shoots").

17. Plaintiff permitted Nappi limited use of the photographs taken at the Additional Nappi Shoots for her social media and personal website purposes only with attribution to Plaintiff for his licensing opportunities, pursuant to an oral agreement. However, Plaintiff did not authorize Nappi to sublicense, assign, or otherwise transfer any rights in the photographs to third parties, nor did Plaintiff authorize Nappi to license to third parties for any for-profit commercial exploitation of the Photos.

18. Despite allowing Nappi the limited right only to post the photographs on her social media accounts and website, which she did on or after October 6, 2024, Plaintiff did not transfer, assign, or license any other rights in the photographs to Nappi. Plaintiff is the sole and exclusive copyright author of all photographs taken by Plaintiff during the First Shoot and Additional Nappi Shoots.

19. Plaintiff did not authorize Nappi to sub-license any of the photographs for any purpose, let alone commercial purposes. At all times, Nappi knew or should have known that Plaintiff was the sole copyright author of the photographs, that she had only an oral right to post the images on her social media page/website, and AVN knew or should have known the same thing.

20. The photographs at issue in this dispute (again, the "Photos") are six (6) of seven (7) photographs taken of Nappi in October 2024, all authored and owned by Plaintiff. True and correct copies of the Photos are attached hereto as **Exhibit A**.

1  Plaintiff timely registered the Photos with the United States Copyright Office as
2  Registration No. VA-2-440-540. A true and correct copy of the copyright
3  registration certificate is attached hereto as **Exhibit B**.

*AVN's Infringement*

21.  On or about January 1, 2025, Defendant AVN published the Photos in AVN Magazine and on AVN.com, without Plaintiff's authorization or consent. AVN did not obtain a release or otherwise obtain consent from Plaintiff to publish the Photos. The magazine cover containing one of Plaintiff's photos is seen here:

[Screenshot of AVN Magazine cover featuring Valentina Nappi posted on AVNMagazine X/Twitter account, dated Jan 2, 2025, 3:24 PM, 47.3K Views, with text "On the Cover: Big League Talent—Going High With @ValeNappi ow.ly/2lCz50Uz5bP 📝 @DanMillerLA". Cover text: "AVN GO-GETTER Cherry Kiss Makes Mark in America VALENTINA NAPPI 504 JAN.25"]

22.  Despite Nappi not having the right to sublicense the Photos for this commercial endeavor, and despite AVN not having any right to use the Photos, and without Plaintiff's authorization or consent, AVN used the Photos, including using one of them as the cover image for AVN Magazine's January 2025 issue. AVN also used the Photos in advertisements, banners, and promotional materials on AVN.com

and social media, as well as on third-party websites or social media promoting AVN.com and the January 2025 issue. True and correct screenshots of examples of AVN's infringing uses of the Photos by AVN and its staff are attached hereto as **Exhibit C**.

23. The January 2025 issue of AVN Magazine is AVN's most popular and widely distributed issue because it coincides with AVN's annual industry setting AVN Awards event, which is generally known and referred to as the "Oscars of the porn" industry, which magazine then profiles finalists and awards coverage for adult performers and adult films.

24. Defendant AVN did not credit, identify or otherwise provide attribution to Plaintiff in connection with the publication of the Photos.

25. Defendant AVN even posted its name in banners on the Photos on its website, not Scott Nathan's name, and further used the cover photo to drive online subscriptions as seen here:

26. On or about April 17, 2025, Plaintiff notified AVN of AVN's unauthorized reproduction and publication of the Photos. After receiving notice of the unauthorized usage, Defendant AVN refused to cooperate with Plaintiff's request for information regarding the scope and extent of AVN's usage of the Photos.

27. After this notice was provided to AVN, Nappi offered Plaintiff $1,000, a well below-market fee, to license the rights in the Photos to try to bless the ill transaction after the fact. Plaintiff rejected this offer.

28. As a direct result of Defendants' unauthorized use and publication of the Photos, Plaintiff has suffered substantial actual damages, including lost licensing revenue, market dilution, and reputational harm. Plaintiff was deprived of the opportunity to license the Photos at fair market rates for cover magazine and social media uses driving commercial gain, and the widespread unauthorized publication diminished the exclusivity and value of Plaintiff's works.

29. Defendants' infringement was willful and intentional. First, AVN is a sophisticated publisher with knowledge of copyright law and licensing practices. AVN knows that it must secure rights' clearances pre-publication as part of its internal chain of custody and IP due diligence process for commercial exploitation of photos, and had no legitimate, good faith basis to believe Nappi was either the author or copyright owner of the Photos at issue. Second, Nappi's Model Release that memorializes the basic standard terms of all photo shoots makes clear that vis-a-vis photographers she lacks any copyright interest that she could license to AVN for its commercial exploitation, a fact AVN was on information and belief aware of. Related, Nappi offered no written document demonstrating a copyright assignment or a license for commercial exploitation. Third, despite receiving notice of infringement, AVN refused to provide information regarding the scope of publication, and attempted to retroactively legitimize its conduct via Nappi's offer of a below-market license offer. Moreover, AVN claims to have relied on Nappi's

8
COMPLAINT

oral clam of ownership/rights granted to AVN, but any basic due diligence into the documentary basis for such an alleged claim, or phone call or email to Plaintiff herein, would have demonstrated that she lacked such rights. Sophisticated business and media entities would never rely on the claim of the subject of the photo taken by a professional photographer—where the subject rarely if ever as a part of the industry standard for photo creation owns the copyright to a photo taken by someone else—of ownership or oral commercial exploitation rights in its publication diligence process. Finally, when plaintiff gave Nappi the images for her limited social media use, those images contained digital copyright management information and other metadata such as SMN_#### denoting the photo and Plaintiff's initials, which AVN would on information and belief have seen when it received them from Nappi and sought to modify them for publication.

## FIRST CAUSE OF ACTION

### (Copyright Infringement, 17 U.S.C. § 501)

### (By Plaintiff against All Defendants)

30.   Plaintiff incorporates herein by reference the allegations in paragraphs 1 through 29 above as though fully set forth herein.

31.   Plaintiff is the rightsholder to the copyright of the Photos, which substantially consist of wholly original material that constitute copyrightable subject matter under the laws of the United States. Plaintiff has complied in all respects with the Copyright Act and all laws of the United States governing copyrights. The Photos have been timely registered with the United States Copyright Office. *See* Exhibit B.

32.   Defendants directly, vicariously, and/or contributorily infringed, and unless enjoined, will continue to infringe Plaintiff's copyrights by reproducing, publicly displaying, modifying, distributing, and utilizing the Photos for purposes of trade without authorization of or payment to Plaintiff in violation of 17 U.S.C. § 501 et seq.

33. Defendants willfully infringed, and unless enjoined, will continue to infringe Plaintiff's copyrights by knowingly reproducing, modifying, displaying, distributing, and utilizing the Photos without Plaintiff's license and consent for purposes of trade.

34. Plaintiff is informed and believes that Defendants' acts of infringement are willful because, inter alia, Defendant AVN is a sophisticated business with full knowledge of the strictures of federal copyright law and the basic requirements for licensing and derivatization of the use of copyrighted content for commercial exploitation.

35. Plaintiff is informed and believes that Defendants, despite such knowledge, willfully reproduced and distributed the Photos, without any right to do so.

36. Defendants have received substantial benefits in connection with the unauthorized reproduction, distribution, and utilization of the Photos for purposes of trade, including by increasing the traffic to their websites and subscriptions for purposes of viewing the Photos.

37. Defendants' unauthorized actions were performed without Plaintiff's permission, license, or consent.

38. Defendants' wrongful acts have caused, and are causing, great injury to Plaintiff, of which damages cannot be accurately computed, and unless this Court restrains Defendants from further commission of said acts, Plaintiff will suffer irreparable injury, for all of which he is without an adequate remedy at law. Accordingly, Plaintiff seeks a declaration that Defendants infringed Plaintiff's copyright and an order under 17 U.S.C. § 502 enjoining Defendants from any further infringement of Plaintiff's copyright.

39. As a result of Defendants' wrongful acts alleged herein, Plaintiff has suffered and is suffering substantial damage to his business and livelihood in the

form of diversion of trade, loss of profits, injury to goodwill and reputation, and the dilution of the value of his rights, all of which are not yet fully ascertainable.

40. Plaintiff has identified six (6) copyrighted works infringed by Defendants, which occurred by way of reproduction, modification, public distribution, and public display of the Photo on Defendants' website and in its January 2025 magazine.

41. Because of the willful nature of Defendants' copyright infringement, Plaintiff is entitled to an award of statutory damages of up to $150,000 per copyrighted work, or up to a statutory maximum of $900,000.00.

42. Alternatively, at its discretion, Plaintiff is entitled to actual damages in an amount to be proven at trial for the infringement of all works at issue.

43. Plaintiff is also entitled to its attorneys' fees and costs in prosecuting this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1. That Defendants, their officers, agents, servants, employees, representatives, and attorneys, and all persons in active concert or participation with them, be permanently enjoined from designing, modifying, derivatizing, copying, reproducing, displaying, promoting, advertising, distributing, or selling, or any other form of dealing or transaction in, any and all advertising and promotional materials, print media, signs, Internet websites, or any other media, either now known or hereafter devised, from any use of the Photos that infringe, contributorily infringe, or vicariously infringe upon Plaintiff's rights in the photographs at issue;

2. That Defendants be held liable to Plaintiff in statutory damages for copyright infringement, including willful infringement, in accordance with 17 U.S.C. §§ 504(a)(2) and (c) and for costs, interest, and reasonable attorney's fees pursuant to 17 U.S.C. § 505;

3. That an accounting be made for all profits, income, receipts, or other benefit derived by Defendants from the reproduction, copying, display, promotion, distribution, or sale of products and services, or other media, either now known or hereafter devised that improperly or unlawfully infringes upon Plaintiff's copyrights pursuant to 17 U.S.C. §§ 504(a)(1) and (b);

4. Requiring Defendants to account for and pay over to Plaintiff all profits derived by Defendants from their acts of copyright infringement and to reimburse Plaintiff for all damages suffered by Plaintiff by reasons of Defendants' acts, pursuant to 17 U.S.C. §§ 504(a)(1) and (b);

5. For actual damages for copyright infringement pursuant to 17 U.S.C. §§ 504(a)(1) and (b); and

6. For any such other and further relief as the Court may deem just and appropriate.

Dated: December 17, 2025        **ONE LLP**

By: /s/ Peter R. Afrasiabi
    Peter R. Afrasiabi
    Attorneys for Plaintiff,
    Scott Nathan

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all claims and all issues properly triable thereby.

Dated:  December 17, 2025         **ONE LLP**

By: /s/ Peter R. Afrasiabi
    Peter R. Afrasiabi
    Attorneys for Plaintiff,
    Scott Nathan